**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**Wesley Fullen,**

      **Plaintiff,**

**-v-**                                        **Case No. 2:08–cv–263**

**The City of Columbus,**                     **Judge Michael H. Watson**

      **Defendant.**

## OPINION AND ORDER

This is an employment discrimination case arising from the termination, later modified to a six-month suspension, of an African-American officer in the Columbus Division of Fire.  Plaintiff asserts that he was discriminated against on the basis of race and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Ohio Revised Code § 4112.02. Plaintiff also asserts he was retaliated against for engaging in speech protected by the First Amendment, and that Defendant violated his right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution.  Lastly, Plaintiff complains that Defendant portrayed him in a false light in violation of Ohio law. Defendant moves for summary judgment on all of Plaintiff's claims.  Def.'s Mot. Summ. J., ECF No. 25.  For the reasons that follow, the Court grants Defendant's summary judgment motion.

## I. FACTUAL BACKGROUND

The instant case is one of four related actions currently before this Court, all brought against the City of Columbus ("the City" or "Defendant") by current or former members of the Columbus Division of Fire's Fire Prevention Bureau.  The plaintiffs in

these related cases assert similar claims of race (or race association) discrimination and hostile work environment in violation of Title VII and Ohio Revised Code § 4112.02, claims of constitutional violations pursuant to 42 U.S.C. § 1983, and a state law claim for invasion of privacy/false light.  The lead case of the four, brought by a Battalion Chief formerly assigned to the Fire Prevention Bureau, is Case No. 2:08–cv–31, *Yolanda Arnold v. City of Columbus*.  The Court will refer to that case as the "lead case."  Familiarity with the lead case is presumed.  The Court adopts and incorporates by reference the related Opinion and Order in the lead case into this Opinion.

Plaintiff in the instant action is Wesley Fullen ("Fullen" or "Plaintiff").  Plaintiff is an African-American officer in the Columbus Division of Fire ("CDF"), who was assigned to the Fire Prevention Bureau ("FPB") from 1997 to June 2004.  Plaintiff's claim is primarily based on his termination from the CDF in September 2006, a disciplinary action which was later reduced to a six-month suspension without pay.

Plaintiff was first assigned to the FPB as a Lieutenant in 1997, and was promoted to Captain within the Inspection Section in 1999.  Fullen Dep. 10–13, ECF No. 26.  In March 2004, Plaintiff was promoted to Batallion Chief.  *Id*. at 10.  In June 2004, he bid on and was awarded a transfer out of the FPB Inspection Section to a position as Battalion Chief in the Fire Alarm Office.  *Id*. at 16–17.  He has not worked in the FPB since June 2004.  *Id*. at 17; Pl.'s Corrected Mem. Opp'n to Def.'s Mot. Summ. J. ("memorandum in opposition" or "Pl.'s Mem. Opp'n") Page ID #4477, ECF No. 100.

The PSU, CDP and Krivda investigations, described in the Factual Background section of the Opinion and Order in the lead case, also form the factual background of the instant action.  The following facts are provided as a supplement to that

background.

At the time the PSU and CDP investigations commenced, Plaintiff already had transferred out of the FPB to the Fire Alarm Office. *See* Pl.'s Mem. Opp'n Page ID #4478. Plaintiff was not interviewed in connection with either the PSU or CDP investigation. *See id.*; Fullen Dep. 32–33, ECF No. 26. At the time, he was not even aware those investigations were being conducted. Pl.'s Mem. Opp'n Page ID #4478; Fullen Dep. 32–34, ECF No. 26.

Prior to the start of the Krivda investigation, the City made an agreement with the International Association of Fire Fighters, Local 67 ( the "Union") that a Union representative would be present at the interviews Krivda conducted. Davis Aff. ¶ 3, ECF No. 25–1; *see also* Pettus Aff. ¶ 8, Brown Aff. ¶ 7, ECF Nos. 25–1. James Davis ("Davis") was the Union representative who sat in on Krivda's interviews. Davis Aff. ¶ 4, ECF No. 25–1. Davis states that he did not sit in on every interview, but did attend every interview of which he was aware. *Id.* Plaintiff, as well as the plaintiff inspectors in the four related cases, did not want a Union representative at his interview. *See* Pl's. Mem. Opp'n Page ID # 4480.

The plaintiffs in the related cases also complain that Krivda tape-recorded only some of her interviews. On February 23, 2006, Union President Jack Reall sent a letter to Safety Director Mitchell Brown requesting that all interviews in connection with Krivda's investigation be tape-recorded. Davis Aff. ¶ 6, ECF No. 25–1; Ltr. from J. Reall to M. Brown dated Feb. 23, 2006, ECF No. 67–37. Prior to that date, Krivda had not tape-recorded all the interviews she conducted. Davis attests that all of Krivda's interviews that he attended after February 23, 2006 were tape-recorded. Davis Aff. ¶ 6,

ECF No. 25–1.  The plaintiffs in the four related cases contend that only those interviews with the African-American inspectors, and not with Caucasian officers, were taped.  *See* Pl.'s Mem. Opp'n Page ID #4480.

On March 28, 2006, Plaintiff received a notice from Warren Cox ordering him to report to an interview with Krivda.  *See* Mem. from W. Cox to W. Fullen dated Mar. 28, 2006, ECF No. 72–6.  The notice instructed him to "cooperate fully with the investigator," and warned that "[p]ursuant to City of Columbus Central Work Rules, any employee who fails to participate, cooperate, or otherwise attempts to impede this investigation may be charged with insubordination."  *See id.*   Plaintiff alleges that his interview was initially scheduled for March 30, 2006.  *See* Compl. ¶ 39, ECF No. 2. Plaintiff's interview was rescheduled, and he next appeared for his interview with Krivda on June 15, 2006.  Pl.'s Mem. Opp'n Page ID #4482; Transcribed Notes of Interview Conducted on June 15, 2006 ("Transcribed Notes"), ECF No. 72–5.  Union Vice President James Davis was present, and Plaintiff objected to Davis' presence.  Mem. Opp'n Page ID #4482; Transcribed Notes at 2, ECF No. 72–5.  Plaintiff told Krivda that he was "fully willing to cooperate with the interview," but was "declining to have Union representation."  Transcribed Notes at 2, ECF No. 72–5.  Chief Pettus was called and spoke to Plaintiff on speakerphone.  *Id.* at 25; Fullen Dep. 64–65, ECF No. 59; Pettus Aff. ¶ 10, ECF No. 25–1.  Pettus gave Plaintiff a direct order "to cooperate with this investigation and to have [his] interview conducted as we have agreed it would be conducted, which includes [the Union's] first vice president being present."  Transcribed Notes at 27, ECF No. 72–5; Fullen Dep. 66–67, ECF No. 59; Pettus Aff. ¶ 10, ECF No. 25–1.  Plaintiff responded, "Sir, I'm going to decline to obey your order."  Transcribed

Notes at 27, ECF No. 72–5; Fullen Dep. 67, ECF No. 59; Pettus Aff. ¶ 10, ECF No. 25–1. Pettus then stated, "[Y]ou don't have the option to decline to obey my order. You have the option to be insubordinate . . . ." *Id*. Pettus told Plaintiff that he was "under obligation to obey written orders as well as verbal orders," and stated again, "I am giving you a verbal order as Fire Chief." Transcribed Notes at 28, ECF No. 72–5; Fullen Dep. 68, ECF No. 59; Pettus Aff. ¶ 10, ECF No. 25–1. Plaintiff responded, "I understand that, sir. I am going to decline to obey your verbal order to participate in this investigation . . . ." *Id*. Pettus then stated, "Okay, I'm done with this." Transcribed Notes at 28–29. The next day, Plaintiff wrote an email apologizing to Pettus and stating, "I realize that I should have completed the interview as directed and voiced any concerns I have in a different forum and at a later date." Email from W. Fullen to N. Pettus dated June 16, 2006, ECF No. 72–7. In his deposition, however, Plaintiff testified that although he wrote and sent that email, he was not sincere when he wrote it. Fullen Dep. 71–74, ECF No. 59.

Plaintiff was charged with insubordination for failing to follow direct written and verbal orders. Pettus Aff. ¶ 11, ECF No. 25–1. Chief Pettus recommended that he be terminated. *Id*. Plaintiff then appealed Chief Pettus' recommendation to Safety Director Mitchell Brown. Brown Aff. ¶ 9, ECF No. 25–1. Brown upheld the recommendation of Chief Pettus, sustained the charges, and terminated Plaintiff from the CDF. *Id*. Plaintiff was terminated in September 2006. Fullen Dep. 86, ECF No. 59.

Plaintiff appealed Brown's decision to the Columbus Civil Service Commission. Brown Aff. ¶ 10, ECF No. 25–1. The Civil Service Commission upheld the charge of insubordination for refusal and failure to obey verbal orders from Chief Pettus, but

modified Plaintiff's discipline from termination to a six-month suspension. *Id*; Fullen Dep. 87–88, ECF No. 59; Pl.'s Mem. Opp'n Page ID #4482. Plaintiff did not appeal this finding. Fullen Dep. 88–89, ECF No. 59. Upon his reinstatement, Pettus declined to put him back in the Fire Alarm Office, the position he had held before his termination. *See* Pettus Aff. ¶ 14, ECF No. 25–1. According to Executive Officer Warren Cox, Plaintiff is currently assigned to a "company position." Cox Aff. ¶ 4, attached to Def.'s Reply, ECF No. 105–3. Cox attests that in that position, Plaintiff works 24 hours on duty and then 48 hours off duty with a negotiated "Kelly Day," a schedule which amounts to six 24-hour days of working in a 21-day period. *Id*. Plaintiff attests that his salary in his current position is eight percent less than the salary for an officer working a 40-hour position. Pl.'s Mem. Opp'n Page ID #4486; Fullen Aff. ¶ 26, ECF No. 79. He states that since being reinstated in the CDF, he has attempted to transfer to both the FPB and the Fire Alarm Office, but the CDF has denied these requests. Pl.'s Mem. Opp'n Page ID #4482, 4488. Plaintiff argues that due to the denial of his requests to transfer to a 40-hour position, he has suffered an economic loss of approximately $18,000 (calculated as of last June). Pl.'s Mem. Opp'n Page ID #4486; Fullen Aff. ¶ 30, ECF No. 79.

Plaintiff filed his Complaint on March 19, 2008. ECF No. 2. In his Complaint, Plaintiff asserts claims of race discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02. Compl. ¶¶ 78-85, ECF No. 2. Additionally, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for retaliation for engaging in conduct protected by the First Amendment, and for violations of the Fourteenth Amendment's equal protection guarantee. *Id*. at ¶¶ 86–87,

ECF No. 2. Lastly, Plaintiff asserts a state law claim for invasion of privacy/false light. *Id*. at ¶¶ 88–89, ECF No. 2.

The Court has jurisdiction over Plaintiff's Title VII and § 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II. SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). Under Rule 56(c), the party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record," or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In responding to a summary judgment motion, the non-moving party "may not rest upon its mere allegations or denials of the adverse

party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see also Steward v. New Chrysler*, No. 08-1282, 2011 WL 338457, at *7 (6th Cir. Feb. 4, 2011) ("At this stage in the litigation, a plaintiff may no longer rely solely on her pleadings, but must come forward with 'probative evidence tending to support the complaint.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita*, 475 U.S. at 588 (1986); *Petty v. Metro. Gov't. of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). It is not the obligation of the court to comb the record to find evidence or testimony establishing a party's case. *See Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010) (citing *Street*, 886 F.2d at 1479–80); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d. 479, 487 (6th Cir. 2006).  The Court disregards all evidence favorable to the moving party that the jury would not be required to believe.  *Reeves*, 530 U.S. at 150–51.  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).  Thus, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III.  DISCUSSION

As a preliminary matter, the Court notes that, like plaintiff Yolanda Arnold in the lead case, Plaintiff Fullen does not appear to appreciate the extent of his burden in responding to Defendant's motion for summary judgment, and spends considerable effort arguing that Defendant did not carry its initial burden to disprove his case. Plaintiff, together with the plaintiffs in the four related cases, seemingly filed to the docket nearly every piece of discovery obtained in these cases, including nearly three dozen depositions and nearly two hundred exhibits.  Plaintiff, however, failed to cull this discovery and provides few cites to specific pieces of evidence in support of his allegations and claims.[1]  The Court reiterates that it has no duty "to comb the record to

---

[1]The Court notes that in his memorandum in opposition, Plaintiff argues that "[d]iscovery in all four [related] cases has been an odyssey," that "[t]here is a veritable grocery list of documents requested by Plaintiffs but not produced by Defendant," and that Defendant "actually removed or destroyed records that were pertinent to all Plaintiffs['] claims in these [related] cases."  Pl.'s Mem. Opp'n Page ID #4476. Plaintiff argues that he is "entitled to an adverse inference relating to the documents not produced or

find evidence or testimony establishing a party's case." *Nerswick*, 692 F. Supp. 2d at 882. Rather, Plaintiff, as the non-moving party, has an affirmative duty to direct the Court's attention to those specific portions of the record upon which he seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## A. Race Discrimination

Plaintiff asserts he was the victim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code § 4112.02. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Similarly, Ohio Revised Code § 4112.02 prohibits employers from discriminating against any person with respect to the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of that person's race. Ohio Rev. Code § 4112.02(A). A claim for race discrimination under Ohio Revised Code § 4112.02(A) is evaluated using the same analytical framework as a Title VII claim. *See Allen v. Ohio Dep't of Job and Family Servs.*, 697 F. Supp. 2d 854, 880 (S.D. Ohio 2010).

---

destroyed." *Id.* The record does not reflect, however, that Plaintiff filed any motions to compel the production of documents during discovery. Additionally, even assuming that spoliation occurred, Plaintiff does not argue that a sanction or remedy for the spoliation is appropriate. *See, e.g. Strong v. U-Haul Co. of Mass.*, No. 1:03-cv-00383, 2006 WL 5164822, at *3 (S.D. Ohio Dec. 28, 2006) (discussing factors courts consider in determining whether to sanction the spoliating party). Additionally, Plaintiff does not submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d), showing that he cannot present facts essential to justify his opposition to summary judgment and requesting additional time for discovery or another appropriate order. To the contrary, Plaintiff explicitly represents in his memorandum in opposition that "[d]espite these [discovery] obstacles," "Plaintiffs have marshaled abundant evidence to support their claims under the laws of the United States and Ohio." Pl.'s Mem. Opp'n Page ID #4476. Thus, to the extent Plaintiff may have attempted to imply in complaining about the discovery process that he cannot present facts essential to justify his opposition to summary judgment, he has expressly waived such a claim.

A plaintiff may prove that he was subject to disparate treatment based on race in violation of Title VII using either direct or circumstantial evidence. *See, e.g., Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009). As in the lead case, Plaintiff specifically argues in his memorandum in opposition that he has established a prima facie case of racial discrimination using circumstantial evidence. He does not state that he seeks to prove his claim using direct evidence. Plaintiff does, however, attempt to offer direct evidence in his memorandum in opposition. The Court will thus analyze Plaintiff's claim under both the direct and indirect method of proof.

## 1. Direct evidence

In discrimination cases, direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences" as to discriminatory motive. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

Although Plaintiff does not plainly articulate this argument, he seems to offer testimony from his deposition, as well as a statement by Judy Evergin, as an attempt to establish that Safety Director Mitchell Brown ("Brown") expressed racial bias. See Pl.'s Mem. Opp'n Page ID #4481.[2] Although Plaintiff does not articulate these arguments, it

---

[2] Plaintiff also seems to offer as direct evidence the statement by Virgil Moore regarding Paxton's alleged statement that Paxton "really wanted that n[*****]r [BC] Arnold out of there.'" Pl.'s Mem. Opp'n Page ID #4478. Unlike the plaintiffs in the related cases, however, Plaintiff frankly asserts that "he was never interviewed in either [the PSU or CDP] investigation and, in fact, was not even aware there were investigations being conducted." *Id.* Because Plaintiff was uninvolved in and unaffected by those investigations, he cannot assert a claim of racial discrimination based on them, and the purported statement by Paxton is irrelevant to Plaintiff's claims. In any event, for the reasons stated in the lead

seems to the Court that Plaintiff may attempt to introduce Brown's statement to suggest that either Brown's decision to affirm Plaintiff's termination, or his decision to order the Krivda investigation, was discriminatory.  Specifically, Plaintiff alleges that Brown stated that he "tends to treat blacks more harshly so that he can appear to be unbiased."  *Id.* at #4481.  In support of that allegation, however, Plaintiff offers only inadmissible hearsay.  First, he offers a statement from the affidavit of Judy Evergin ("Evergin"), a lieutenant with the CDF.  In particular, Plaintiff points to Evergin's statement that Charleta Tavares ("Tavares"), a Columbus City Councilwoman, told Evergin that Brown had stated to Tavares that he was "harder on blacks because he did not want it shown that he was showing any bias towards blacks."  Evergin Aff. ¶¶ 27–29, ECF No. 90. Plaintiff also offers testimony from his own deposition, in which he stated that Tavares told Plaintiff that Brown "has stated that he tends to treat blacks more harshly so that he can appear to be unbiased."  Fullen Dep. 53–54, ECF No 59.[3]  Brown attested that he did not make the alleged statement.  Brown Aff. ¶¶ 2–3, attached to Def.'s Reply in Case No. 2:08–cv–262, ECF No. 123–2.

In the lead case, plaintiff Yolanda Arnold also attempted to introduce the alleged statement by Brown, through Evergin's declaration, as evidence of his racial bias. Plaintiff offers no new argument with regard to the alleged statement by Brown, besides what Yolanda Arnold presented in the lead case.  He does not, for instance, argue that

---

case, this statement is double hearsay, and may not be considered by the Court at summary judgment.

[3]It is not entirely clear from Plaintiff's testimony whether he intended to say that Tavares told Plaintiff that *she heard* Brown make the alleged statement, or whether Tavares told Plaintiff that, from her perspective or from what she had been told by someone else, Brown "tends to treat blacks more harshly." See Fullen Dep. 53–60, ECF No. 59.  If Plaintiff intended the latter, not only would Tavares' statement be hearsay, but it also could not be considered purported direct evidence of Brown's alleged racial bias.

either Brown's or Tavares' alleged statements are not hearsay or fall under a hearsay exception. Therefore, for the reasons discussed in the lead case, Evergin's and Fullen's statements regarding Tavares' statement to them about what Brown allegedly said to Tavares are double hearsay and may not be considered by the Court on summary judgment. *See* Fed. R. Evid. 801(c); *Jacklyn*, 176 F.3d at 926; *Gibson*, 409 F.3d at 337.

Plaintiff thus does not provide admissible direct evidence of racial discrimination. The Court therefore proceeds to evaluate Plaintiff's claims under the indirect method.

### 2. Indirect evidence

Plaintiff's circumstantial evidence of race discrimination is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) and *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256–59 (1981). *See, e.g., Upshaw*, 576 F.3d at 584. Under this framework, a plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *See Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). Although "[t]here are many 'context dependent ways by which plaintiffs may establish a prima facie case,'" "the key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).

To establish a prima facie case, a plaintiff must demonstrate that: (1) he is a

member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a similarly-situated person outside the protected class was treated more favorably than he was. *See Braithwaite*, 258 F.3d at 493. If the plaintiff demonstrates a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. *Id*. Once the defendant articulates a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to establish that the defendant's proffered reason was a pretext for discrimination. *Id*. "To show pretext, a plaintiff must be able to demonstrate both that the 'reason was false, and that discrimination was the real reason.'" *Pittman v. Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 917 (N.D. Ohio 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "[A]lthough the McDonnell Douglas presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr.*, 509 U.S. at 518 (quoting *Burdine*, 450 U.S. at 253).

In the context of a Title VII discrimination claim, an adverse employment action is a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Mich. Dept. of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999)). A materially adverse change includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th

Cir. 2002)).  Notably, "a change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Defendant first argues that Plaintiff cannot establish a prima facie case of race discrimination based on the PSU, CDP, and Krivda investigations.  Defendant argues that the investigations themselves were not adverse actions, and further argues that neither the fact that Union representative James Davis was present during Krivda's interviews, nor that Krivda's interview with Plaintiff was tape-recorded, constitutes an adverse action.  Defendant also argues that Plaintiff was not treated differently than similarly-situated co-workers outside his protected class with respect to the investigations, and that, even if Plaintiff could establish a prima facie case, the investigations were conducted for a legitimate non-discriminatory reason.  Additionally, Defendant argues that Plaintiff's claim of race discrimination based on the PSU and CDP investigations is time-barred because Plaintiff did not file his EEOC charges regarding those investigations within 300 days from when the investigations concluded.

Second, Defendant argues that Plaintiff cannot establish a prima facie case of race discrimination based on his discipline for insubordination in 2006, because he cannot establish that he was treated differently than similarly-situated individuals with regard to that discipline.  Additionally, Defendant argues that it had a legitimate non-discriminatory business reason for disciplining Plaintiff.

In response, Plaintiff argues that he can establish a prima facie case of race discrimination.  Apart from his suspension, he argues that the fact that he was not

reinstated to the Fire Alarm Office upon his return to the CDF, and has been denied his requests to return to either that office, or to the FPB or Public Information Office constitutes an adverse action. He argues that CDF's refusal to grant his transfer requests has resulted in economic loss. *See* Pl.'s Mem. Opp'n Page ID #4486–87 & n.6. Plaintiff also argues that he was treated differently than similarly-situated individuals with respect to the denial of his transfer requests.

In addition, in language nearly identical to that of the plaintiffs in the related cases, Plaintiff argues he suffered an adverse action based on the PSU, CDP and Krivda investigations and the corresponding negative media coverage. Specifically, Plaintiff argues as follows:

> Fullen also can show adverse action in the following: 1) investigations based on clear falsehoods and bare allegations, picked up by the press. Plaintiff Fullen was singled out and falsely accused quite publicly in the *Dispatch* and the CDF of criminal behavior, as well as "failing a drug test" and past behavior in the military; 2) Fullen obviously suffered tangible losses being associated with, and working as a captain for the Inspection section of FPB, as well as the Krivda investigation fallout. . . . Fullen, as well as all of the other Plaintiffs in these interrelated cases, was singled out for public and false allegations of "criminal" wrongdoing. The harassment was so severe that it, too, altered the terms and conditions of their employment: loss of opportunities, loss of overtime and monies, loss of possibilities for advancement, loss of dignity. The increased (unwarranted) scrutiny alone was itself adverse.

Pl.'s Mem. Opp'n #4486–87 (internal citations omitted).

In addition to arguing that he did satisfy the prima facie case, Plaintiff also argues that Defendant's stated reasons for its actions were pretextual.

### a. The PSU, CDP, and Krivda investigations

As it did in the lead case, the Court surmises that with the language cited above, Plaintiff attempts to argue that the PSU, CDP, and Krivda investigations constituted

adverse employment actions. The Court reiterates, however, that Plaintiff was not a member of the FPB during the time the PSU and CDP investigations were conducted, and that Plaintiff himself asserts he was not only never interviewed in connection with either investigation, but also was not even aware that the investigations were being conducted. Fullen Dep. 17, ECF No. 59; Pl.'s Mem. Opp'n Page ID #4477, 4478. Logically, then, to the extent Plaintiff asserts race discrimination based on those two investigations, such claim must fail.[4]

In support of his purported claim of race discrimination based on the Krivda investigation, Plaintiff presents no additional argument or authority beyond what was raised in the lead case. Specifically, Plaintiff presents no authority that the degree of scrutiny of the Krivda investigation rose to the level of an adverse action. Plaintiff does not present evidence that the negative media coverage or the content of the articles in The Columbus Dispatch effected a "materially adverse change in the terms or conditions of [his] employment." Michael, 496 F.3d at 593. Additionally, Plaintiff does not offer legal authority indicating that Defendant may be held responsible for any processes or procedures of the investigation conducted by Krivda, an independent third party. Further, Plaintiff presents no additional evidence of the theory, also advanced by plaintiff Yolanda Arnold in the lead case, that someone in the CDF was leaking false information about them to the Dispatch, and encouraging the allegedly harassing stories. Nor does Plaintiff present authority to establish that articles in the Dispatch,

---

[4]Additionally, Plaintiff's claim of race discrimination based on the PSU and CDP investigations would be time-barred for the purposes of his Title VII claim. Plaintiff filed his EEOC charge of discrimination complaining, inter alia, of those investigations, on February 12, 2007, far more than 300 days after the conclusion of the investigations in February and March 2005. See Gordon Aff. ¶¶ 1–6 and attachment thereto, ECF No. 25–2.

written by a member of the *Dispatch* staff, may form the basis of a Title VII race discrimination claim.  Plaintiff, lastly, presents no evidence to indicate that the investigation was a pretext for race discrimination.  Therefore, since the argument Plaintiff presents is in all essential respects the same as that presented by Yolanda Arnold in the lead case, for the reasons elaborated in the lead case, Defendant is entitled to summary judgment on Plaintiff's race discrimination claim based on an allegation that the Krivda investigation constituted an adverse action.

### b.  Discipline for insubordination and denial of transfers

It is undisputed that Plaintiff suffered an adverse action when he was terminated in September 2006 and ultimately suspended without pay for six months.  Plaintiff also asserts that he suffered additional adverse actions following his reinstatement, because Defendant has not granted his requests to transfer back to the Fire Alarm Office or to the FPB or Public Information Office.  Pl.'s Mem. Opp'n Page ID # 4486.  Plaintiff appears to claim that Defendant's failure to transfer him to another position was an adverse action because his pay is lower than what it would be if he were in one of the positions he requested.  *See id*.  For purposes of argument, the Court assumes that Defendant's denial of Plaintiff's transfer requests was an adverse employment action based on the alleged difference in salary between the positions.  Even if the denial of his transfer requests is considered an adverse action, however, Plaintiff has not established a prima facie case of race discrimination with regard to this action because he does not show that he was treated differently than similarly-situated individuals outside of his protected class.  Similarly, although there is no question that Plaintiff suffered an adverse action in the form of his suspension, he has not established a

prima facie case with regard to that discipline because he likewise does not satisfy the similarly-situated requirement.

It is Plaintiff's burden to produce affirmative evidence to establish that he was treated differently than a similarly-situated person outside his protected class. *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). To satisfy the similarly-situated requirement, a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment;" rather, the plaintiff must demonstrate that he is similarly situated to the purported comparator in "all of the *relevant* aspects." *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)) (emphasis in original) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). To be "similarly situated" in the disciplinary context, the plaintiff and his proposed comparator must have engaged in acts of *"comparable seriousness."* *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (emphasis in original) (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)). Factors to be considered may include whether the individuals with whom a plaintiff seeks to compare his treatment dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583.

Although Plaintiff asserts that he "is the only [CDF] uniformed personnel who has been terminated for insubordination," he provides no evidence of that claim. Pl.'s Mem. Opp'n Page ID #4482. Additionally, although Plaintiff does identify two Caucasian officers he alleges were similarly situated to him, BC Cannell and Captain Vedra, *see*

*id*. at Page ID #4488, he does not establish that those officers were indeed similarly situated with regard to their employment situations, their misconduct, or their discipline. In his memorandum in opposition, Plaintiff simply argues that Cannell and Vedra "were also found guilty of insubordination [and] transferred into the FPB at about the same time that Fullen was seeking his transfer." *Id*.; *see also id*. at Page ID #4482. In support of his claim he cites to his deposition testimony, in which he states: "You have two white males that have allowed to get transferred to the fire prevention bureau. The only reason that the City has for me not going is because I was found guilty of insubordination. I'm a black male." Fullen Dep. 93, ECF No. 59. Plaintiff also states in his deposition that Cannell, "who is now a battalion chief, was a captain at the time he was [in]subordinate" and got a "24-hour suspension," and that Vedra "was a lieutenant at the time he was [in]subordinate," "was later promoted to captain," and "got a 48-hour suspension," which was later rescinded. Fullen Dep. 96–97, ECF No. 59.

Although Plaintiff correctly emphasizes that "[s]imilarly situated persons need not have the same experiences," *see* Pl.'s Mem. Opp'n Page ID #4490–91, Plaintiff still must demonstrate that he is similar to his purported comparator in "all of the *relevant* aspects." *See Ercegovich*, 154 F.3d at 352. Here, Plaintiff's skeletal allegations regarding Cannell and Vedra are insufficient to establish that they are similarly situated to him. Plaintiff provides no argument or evidence that the acts of insubordination for which Cannell and Vedra were disciplined were of "comparable seriousness." *Wright*, 455 F.3d at 710. Plaintiff also provides no argument or evidence to demonstrate that their employment situations, and the circumstances under which they requested and received transfers, are comparable to his. Additionally, it is not clear that there are no

significant "differentiating or mitigating circumstances" that would distinguish the conduct of Cannell or Vedra or Defendant's treatment of them for it. *Mitchell*, 964 F.2d at 583. It is not the Court's duty to search the record in support of evidence that might establish this element of the prima facie case. *See Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d at 882. Rather, Plaintiff has an affirmative duty to direct the Court's attention to evidence supporting his claim. *See In re Morris*, 260 F.3d at 665.

As a final note, even if Plaintiff had established the similarly-situated element of the prima facie case regarding his suspension, his claim of race discrimination based on that action would still fail. Defendant offers a legitimate, non-discriminatory reason for Plaintiff's discipline: he disobeyed a direct order given by Fire Chief Pettus. Plaintiff offers no evidence that this stated reason was a pretext for discrimination.

## B. Hostile Work Environment

In his Complaint, Plaintiff alleges that he was subject to a hostile work environment both on the basis of race and in retaliation for filing charges of discrimination, in violation of Title VII and Ohio Revised Code § 4112.02. Compl. ¶¶ 82–85, ECF No. 2. Although Plaintiff does not cogently distinguish between those two distinct claims in his memorandum in opposition, the Court will address each in turn.

### 1. Racially hostile work environment

Plaintiff asserts that he was subject to a racially hostile work environment in violation of Title VII and Ohio Revised Code § 4112.02. To establish a prima facie case of hostile work environment based on race, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3)

the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 608 (6th Cir. 2008). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotations and citations omitted). The Court must examine the totality of the circumstances to determine whether the work environment was hostile. *Harris*, 510 U.S. at 23. In doing so, the Court considers factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *see also Barrett*, 556 F.3d at 515.

In establishing an adverse effect on work performance, a plaintiff need not prove that his tangible productivity has declined due to the harassment, but need only show that the harassment made it more difficult to do his job. *See Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988). Both an objective and a subjective test must be applied: the conduct must have been severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as having been abusive. *Harris*, 510 U.S. at 21–22. Title VII is not a "general civility code," and thus "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted). Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see also Barrett*, 556 F.3d at 515 (quoting *Faragher*).

Claims for hostile work environment brought under Ohio Revised Code § 4112.02 are evaluated using the same evidentiary standards and analysis used for federal claims under Title VII. *See Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1157 (S.D. Ohio 2010).

In the section of Plaintiff's memorandum in opposition headed "Samples of evidence in the record of the hostile environment endured by all of the Plaintiffs in the interrelated cases," Plaintiff sets forth only three specific such samples, all articles from *The Columbus Dispatch*. Pl.'s. Mem. Opp'n Page ID #4491–93. In addition to the negative media coverage, Plaintiff also mentions in that section the "audacious departure from policy with respect to the 'required' Union presence at the Krivda investigation." *Id.* at page ID #4492. In that section, Plaintiff does not mention his suspension or the CDF's denial of his transfer requests.

Plaintiff provides no cogent argument or admissible evidence to establish that any of the actions of which he complains were based on race. Rather, Plaintiff offers only the bare allegation that he was subjected to a racially hostile work environment, which is insufficient to establish such a claim. *See Sandridge*, 385 F.3d at 1035–36.

### 2. Retaliatory hostile work environment/retaliatory harassment

Although Plaintiff asserts a claim for racially and retaliatory hostile work environment, he does not distinguish between these two distinct types of harassment in

his memorandum in opposition. The Court thus briefly addresses Plaintiff's purported claim of retaliatory harassment.

Title VII prohibits an employer from discriminating against any employee . . . "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim under Ohio Rev. Code § 4112.02 is evaluated using the same evidentiary standards and analysis as a Title VII claim. *See Satterfield*, 736 F. Supp. 2d at 1165–66.

The Sixth Circuit recognizes that retaliation may take the form of materially adverse employment actions or a hostile work environment. *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000); *Allen*, 697 F. Supp. 2d at 902–03. To establish a prima facie case of retaliatory hostile work environment, a plaintiff must demonstrate: (1) he engaged in an activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant subjected plaintiff to severe and pervasive retaliatory harassment by a supervisor; and (4) a causal connection exists between the protected activity and the harassment. *Morris*, 201 F.3d at 792; *Russell*, 537 F.3d at 609.

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *Morris*, 201 F.3d at 792–93. If the defendant carries this burden, the plaintiff, who bears the burden of persuasion throughout the entire process, must then demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id*. at 793.

Plaintiff filed his EEOC charge in February 2007, after the three investigations and his termination. Gordon Aff. ¶¶ 1–6 and attachments thereto, ECF No. 25–2. In his memorandum in opposition, Plaintiff does not present evidence or even plainly argue that he was subsequently subjected to a retaliatory hostile work environment due to the filing of that EEOC charge. Because Plaintiff does not develop an argument or present legal authority in support of his claim of retaliatory hostile work environment, he has therefore waived that claim. *See Sandridge*, 385 F.3d at 1035–36.[5]

## C. Retaliation for engaging in speech protected by the First Amendment, in violation of 42 U.S.C. § 1983

Plaintiff brings a claim under 42 U.S.C. § 1983 alleging that Defendant retaliated against him for engaging in speech protected by the First Amendment to the U.S. Constitution.

Defendant's argument for summary judgment on that claim is identical in substance to its argument in the lead case. First, Defendant argues that any claims arising from events that occurred prior to March 2006 are barred by the two-year statute of limitations. Second, Defendant argues that Plaintiff fails to allege or prove essential elements of his First Amendment retaliation claim. Finally, Defendant argues that pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658

---

[5]The Court notes that for the purposes of his First Amendment retaliation claim, Plaintiff asserts that he complained about retaliation and harassment at a press conference in July 2005, and participated in a City Council meeting on May 1, 2005 where "the issues involving the FPB and required and illegal 'Union representation' and the Krivda investigation issues were openly discussed." Pl.'s Mem. Opp'n Page ID #4496. To the extent Plaintiff attempts to assert that he was retaliated against for his participation in these forums, however, the Court notes that, first, he does not argue and provides no authority that his "complaints" in that context are protected activity under Title VII. Even if they could be considered protected activity, Plaintiff offers no evidence of a causal connection between these "complaints" and an alleged hostile work environment.

(1978), the City of Columbus, as the sole Defendant, cannot properly be held liable under § 1983 for the conduct of its employees or agents.

Plaintiff's argument in response is also nearly identical in substance to plaintiff Yolanda Arnold's in the lead case.  Plaintiff argues that his claim is not barred by the statute of limitations, that he establishes the required elements, and that Defendant can properly be held liable.

The parties' arguments closely mirror those of the lead case, and no new arguments regarding Plaintiff's § 1983 claim that the Court has not already addressed in the lead case are advanced.  Thus, for all of the reasons enumerated in Section III(D) of the Opinion and Order of the lead case, Plaintiff here also fails to establish a viable claim against the City of Columbus for retaliation in violation of his First Amendment rights, pursuant to 42 U.S.C. § 1983.

## D. Violation of Plaintiff's Fourteenth Amendment right to equal protection, in violation of 42 U.S.C. § 1983

Plaintiff's Complaint also purports to assert a claim under 42 U.S.C. § 1983 for the violation of his right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution.  Compl. ¶¶ 86–87, ECF No. 2.  Plaintiff presents no argument in support of that claim in his response to Defendant's motion for summary judgment; he has therefore waived any claim based on alleged violations of the Fourteenth Amendment.  *See Sandridge*, 385 F.3d at 1035–36.  Moreover, even if Plaintiff had not waived that claim, it would also fail for the same reasons stated in Section III(C), above, and Section III(D) of the Opinion and Order of the lead case.

## F. Remaining state law claim

Having determined that Plaintiff's federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for Invasion of Privacy—False Light (Count VI).  28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  The Court will therefore dismiss that state law claim without prejudice.

## V. DISPOSITION

For the aforementioned reasons, the Court **GRANTS** the City of Columbus' summary judgment motion.  ECF No. 25.  The Court **DISMISSES** the following claims **WITH PREJUDICE**: Race Discrimination in violation of Title VII and Ohio Rev. Code §§ 4112.02 & 4112.99  (Counts I & II); Hostile Work Environment in violation of Title VII and Ohio Rev. Code §§ 4112.02 & 4112.99  (Counts III & IV); First Amendment Retaliation and violations of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 (Count V).  The Court dismisses Plaintiff's state law claim for Invasion of Privacy/False Light (Count VI) **WITHOUT PREJUDICE**.

The Clerk shall remove ECF No. 25 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**